110 So.2d 417 (1959)
Kenneth NIELSEN, a minor, by his mother and next friend, Clara Nielsen, and Clara Nielsen, Individually, Appellants,
v.
CITY OF SARASOTA, a municipal corporation of the State of Florida, and Sarasota Bay Post No. 30, American Legion, a Florida Corporation, Appellees.
No. 677.
District Court of Appeal of Florida. Second District.
March 11, 1959.
Rehearing Denied April 20, 1959.
Icard, Merrill & Cullis, Sarasota, for appellants.
Dexter, Conlee & Bissell, Sarasota, for appellee, City of Sarasota.
Shackleford, Farrior, Stallings, Glos & Evans, Tampa, for appellee, Sarasota Bay Post No. 30, American Legion.
SMITH, FRANK A., Associate Judge.
This was a suit brought to recover for personal injuries to the minor plaintiff. The appeal is by the plaintiff from a summary judgment entered on behalf of the appellees.
The second amended complaint alleged injuries to the minor plaintiff when he fell from the grandstand at a ball park owned by the City of Sarasota. At the time of the accident a game was being sponsored by Sarasota Bay Post No. 30, American Legion. The complaint set up the claim that the defendants had a duty to safeguard the patrons; that the grandstand was defectively constructed or maintained; that there was no adequate supervision for small children; and that the minor plaintiff slipped or stumbled and fell a distance of about fifteen feet to the ground, sustaining serious injuries. The mother of the minor plaintiff also stated a claim since she had legal custody of him.
Motions to dismiss, to strike, and for more definite statement were filed on behalf *418 of each of the appellees. These motions were denied with insignificant exceptions as to the motion to strike on behalf of the City of Sarasota.
On motion of the City of Sarasota summary judgment was entered in favor of the City as to the claim of the child's mother. This was apparently on the ground stated in the motion that written notice of the injury had not been given to the City within thirty days as required by statute. The thirty day period was up August 5th and actual notice was given August 31, 1956. The Court refused to apply this to the minor plaintiff because of the injuries he received, holding in effect that a reasonable time was allowed for notice after he regained consciousness and further holding that the minor plaintiff should not be prejudiced by the failure of his mother to give notice.
Answers were filed on behalf of both defendants, and in time the case came on for hearing on motions for summary judgment filed by both defendants, based on affidavits, interrogatories, and depositions. The Court entered summary judgment, holding that there was no genuine issue of material fact and that the defendants were entitled to judgment, that there was no showing either of negligence or that the injury was the proximate result of the alleged negligence. This appeal was instituted and cross-assignments of error were filed by the appellees.
On the day of the accident, Sarasota Bay Post No. 30, American Legion was sponsoring a baseball game at Payne Park, a municipal park of the City of Sarasota. There was no payment for lease or use of the City's facilities. The minor plaintiff, Kenneth Nielsen, then just under six years of age, attended the game with his sister, Karen Nielsen, then about fourteen, and another boy. There was no charge for attendance of children but adults were charged for admission. Kenneth was permitted to play underneath the grandstand for a time but at about the fourth inning his sister called to him to come up where she was. She was sitting at the second row of seats from the top. Kenneth proceeded up an aisle and was approaching his sister from her left, walking along the footboard for the next row of seats above and behind her. Kenneth fell through the open space between the footboard where he was walking and the next higher row of seats. He fell about fifteen feet to the ground, struck or brushed against a man standing below the grandstand, struck his head on the ground, and sustained serious injury requiring a brain operation.
The record shows that there were no witnesses to the fall, except Karen Nielsen, Kenneth's 14 year old sister, her girl friend, Karen Stuart and Mr. Potter who was standing beneath the stands at the point where the fall occurred. Kenneth has no memory of the occurrence, probably due to the brain concussion he suffered.
No one saw him begin his fall, but Karen Stuart who was seated back of Karen Nielsen and located very close to him shortly before he fell did see him going head first through the space between the floor boards and the seat or bench she was occupying. The sister's first alerting to the fall was upon hearing someone to her left and rear scream the name "Kenny". Upon hurrying below she found her brother Kenneth beneath where he had last been seen before his descent.
Karen had called Kenneth from playing beneath the stands to return to her and he had come up a ramp and into the stands and when last seen by her was approaching in the row of seats next above hers and had approached to within eight to twelve feet. Karen Stuart last saw him standing and talking to her friend seated close to her on the same bench with her and only a foot or a foot and a half away. Both Karens testified that when they observed him on his approach he "was not horsing around or running around" nor was he crawling *419 around. He was either standing or walking. Very likely the explanation of the failure of these girls to observe Kenneth's fall was due to the excitement of a homerun which had been hit in the ball-game they were witnessing.
It is ever so unfortunate that Kenneth suffered this fall and most serious injury and likewise it is very unfortunate that there is no witness who can testify as to how it occurred; what caused it.
We know that the space between the floor boards on which he was walking and the seat above same is sufficiently large for his body to pass through it, although the measurement is not shown. He was a five year old (very nearly six years) boy who weighed less than his sister Karen who said her weight was seventy-eight pounds.
Competent engineers gave affidavits to the faulty construction of the stands, which was mainly to the effect that the floor boards were too narrow, so that same did not extend to as much as a perpendicular under the edge of the seat above. This discrepancy varied from two to six inches according to their affidavits. However, there is no showing, and it is clear that it cannot be shown, that such defect caused Kenneth to sustain his fall. The only explanation suggested is that he may have slipped on one of the bolts. The only protrusion of bolts shown at this particular location was of three or four, but Karen said the bolt heads were stuck in as far as they would go; she didn't "mean they were loose, just the head showing over the board". She told about a space between the footboards, about an inch in width, into which the side of her foot would go, but there is no showing that had in any way contributed to his fall. The fact of a chip or splinter missing from the inside of one of the floor boards furnishes no evidence of the cause of his fall.
"On a motion for summary judgment the Court should not be asked to substitute itself for a jury and try controverted issues of fact. For the purpose of such a motion it should be assumed that every fact as to which the party moved against has any appreciable evidence may at a trial be established to the satisfaction of a jury. But if the party moved against has admitted facts which preclude him ever obtaining a judgment, or is without evidence to support a fact which he must establish to succeed, or, in the face of substantial evidence by his opponent, is without evidence to rebut a fact established by his opponent's evidence which, if true, precludes a judgment in his favor, then there is no necessity for a trial and a summary judgment is proper". Connolly v. Sebeco, Fla., 89 So.2d 482, 484.
"When undisputed facts show that there was no negligence on part of defendant, or that negligence of plaintiff appreciably caused accident or was sole proximate cause of accident, there is nothing to submit to jury." Fields v. Quillian, Fla., 74 So.2d 230, 231.
And in the case of Pritchard v. Peppercorn & Peppercorn, Inc., Fla., 96 So.2d 769, 770, our Court further stated:
"In Herring v. Eiland, Fla., 1955, 81 So.2d 645, we held that where a plaintiff fails to present affidavits in support of the allegations of the complaint, or in the alternative affidavits in opposition to a motion for summary judgment showing reasons why essential facts could not be presented by contesting affidavits, then all that the trial judge has before him for consideration are the unsupported complaint and the depositions or affidavits of the movant for the summary judgment. If such depositions and affidavits under these circumstances reveal no cause for complaint it is proper to enter a summary judgment for the defendant."
*420 The depositions and affidavits reflect a situation of an absence of any competent testimony as to the particulars preceding and incident to the boy's fall, so that one can only speculate or imagine what actually took place in bringing about his unfortunate downward plunge. There is a total lack of certain evidence to prove proximate cause even if it might be said that there was some evidence of negligence by reason of the faulty construction of the stands. Surely there is no proof that any such faulty construction was the proximate cause of his injury.
Appellant relies upon the case of Tucker Brothers, Inc. v. Menard, Fla., 90 So.2d 908, 910, as authority to support his contention that the circumstances are sufficient to establish the claim that he was injured by the wrongful act of defendants and that such negligence was the proximate cause of such injury. In that case it was shown that plaintiff and other children in the neighborhood were accustomed to going upon the Tucker premises to play; that a contractor was constructing a dwelling and that on the lot there were a pile of lumber, drainpipe, tools, trucks, cans, mortar boxes, wire and other materials commonly used in the building trade and that for some period the contractor had used the lot for burning trash. After the boy ran home screaming from his burns a bed of red-hot coals covered by a layer of gray ashes was found and across therefrom "was the charred remains of a freshly burned stick, one end of which was not completely burned but was still smoking."
The Court held that the showing was sufficient to justify the jury in finding that it constituted an attractive nuisance and the circumstantial evidence was sufficient to support a finding that the boy had suffered his wounds from the fire on Tucker's premises. The Court did not discuss the question of proximate cause and surely it was unnecessary to do so. All of the evidence pointed to the fact of injury from the fire on the premises which were maintained so as to attract children and when one was so attracted and injured the cause of action was complete, without any occasion for anyone to ponder what was the proximate cause. In the instant case, even if it be assumed, which we do not, that there was negligence on the part of the defendants or either of them, the record is devoid of any proof whether or how any such negligence caused Kenny's injury. It does not suffice to establish actionable negligence to find that for some unknown reason he fell through the open space immediately after standing on the narrow footboards.
As held by our Supreme Court in the case of Herring v. Eiland, Fla., 81 So.2d 645, "Where plaintiffs, seeking to recover for injuries sustained by passenger in defendant's automobile, failed to present, at hearing on defendant's motion for summary judgment, affidavits in support of genuineness of complaint, or affidavits in opposition to motion showing that plaintiff could not for reasons stated present by affidavits facts essential to justify opposition, and the depositions of defendant and his wife did not tend to disclose gross negligence on part of defendant, it was proper for trial court to enter summary judgment in favor of defendant." Also cited in Pritchard v. Peppercorn & Peppercorn, Inc., 96 So.2d 769.
Since the Court finds no actionable negligence is shown and affirms the summary judgment for defendants, it is unnecessary to deal with other assignments of error.
Finding that the entry of the summary judgment was upon the basis of the absence of any genuine issue of material fact, the same is hereby affirmed.
KANNER, C.J., and ALLEN, J., concur.